IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,  ) | No. CV 08-883-PHX-SRB (HCE) |
| ) | No. CR 06-381-PHX-SRB |
| Plaintiff/Respondent,  ) | |
| ) | **REPORT & RECOMMENDATION** |
| vs.  ) | |
| ) | |
| ) | |
| Juan Arambulo-Sanchez,  ) | |
| ) | |
| Defendant/Movant.  ) | |
| ) | |
| ) | |

Pending before the Court is Movant's *pro se* Motion Under 28 U.S.C. §2255 To Vacate, Set Aside Or Correct Sentence By A Person In Federal Custody (Doc. No. 1) (hereinafter "Motion"). In accordance with the Rules of Practice of the United States District Court for the District of Arizona and 28 U.S.C. §636(b)(1), this matter was referred to the undersigned Magistrate Judge for a Report and Recommendation. For the following reasons, the Magistrate Judge recommends that the District Court deny and dismiss the Motion.

A court must conduct a hearing on a motion under 28 U.S.C. §2255 "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, ...." 28 U.S.C. §2255(b). The Motion as well as the files and records conclusively establish that Movant is not entitled to relief. *See Shah v. United States,* 878 F.2d 1156, 1159 (9th Cir. 1989). Consequently, no hearing is required to resolve Movant's Motion.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On April 3, 2006, Movant was arrested for harboring illegal aliens. On April 11,

2006 Movant was indicted for Conspiracy to Commit Hostage Taking in violation of 18 U.S.C. §1203 (Count 1); Hostage Taking in violation of 18 U.S.C. §1203 (Count 2); Harboring Illegal Aliens in violation of 18 U.S.C. 1324(a)(1)(A)(iii) (Count 3); and Possessing a Firearm In Connection With a Crime of Violence in violation of 18 U.S.C. §924(c)(1)(A)(i) (Count 4). (Plaintiff/Respondent's Response In Opposition To Motion To Vacate, Set Aside Or Correct Sentence Pursuant To 28 U.S.C.§2255, p. 1 (Doc. No. 2)) (hereinafter "Response p.__").

On August 28, 2006 Movant entered a plea of guilty pursuant to a plea agreement to Possessing a Firearm In Connection With a Crime of Violence in violation of 18 U.S.C. §924(c)(1)(A)(i) (Count 4). (Response Ex. 3, pp.1-27 (Doc. No. 2-4)). As part of Movant's plea agreement, Counts 1through 3 were to be dismissed at sentencing. (Response Ex. 2 (Doc. No. 2-3, p.2)). The plea agreement set out that the offense of Possessing a Firearm In Connection With a Crime of Violence is punishable by a maximum fine of $250,000.00; incarceration from a mandatory minimum sentence of five years to as much as life; and a term of supervised release of five years to follow incarceration. (*Id.* at p. 3). Movant and Respondent stipulated and agreed that Movant would receive a sentence of imprisonment between five and ten years. (*Id.* at p.4). If the Court concluded that any provision of the plea agreement was inappropriate, the Court could reject the plea agreement, giving either Movant or Respondent an opportunity to withdraw from the plea agreement pursuant to Rule 11(d)(2)(A) of the Federal Rules of Criminal Procedure. (*Id.*). If the Court imposed sentence in accordance with the terms of the plea agreement, Movant waived: (1) any right to appeal the Court's entry of judgment against Movant; (2) any right to appeal the imposition of sentence upon Movant under 18 U.S.C. §3742; and (3) any right to collaterally attack Movant's conviction and sentence under 28 U.S.C. 2255. (*Id.* at p. 5). Furthermore, the plea agreement specifically stated:

> The [Movant] acknowledges that this waiver shall result in the dismissal of any appeal or collateral attack the [Movant] might file challenging his conviction or sentence in this case.

(*Id.*).

- 2 -

On November 13, 2006 the Court sentenced Movant to a term of six years of incarceration to be followed by a term of five years of supervised release. (Response p. 2). Judgment was entered on November 16, 2006. (*Id.*) Movant did not file a direct appeal and judgment became final on December 1, 2006. (*Id.*) On May 7, 2008 Movant filed his *pro se* Motion pursuant to 28 U.S.C. 2255. (Motion (Doc. Nos. 1, 1-2))

## II. CLAIMS PRESENTED

### A. Sixth Amendment Violation

Movant opines that defense counsel was ineffective in his representation of Movant in that he: (1) failed to file a notice of appeal within ten days after sentence was imposed; (2) failed to advise Movant about waiving his due process rights; (3) coerced Movant into involuntarily signing his plea agreement not knowing nor understanding the terms and conditions of such plea agreement. (Motion p. 5 (Doc No. 1, pp. 1, 5-6, 9, 10; Doc. No. 1-2)).

### B. Defense Counsel Did Not Argue *United States v. Booker*

Movant opines that defense counsel failed to argue crucial issues and laws concerning sentencing within U.S. Sentencing Guidelines in violation of *United States v. Booker,* 543 U.S. 220 (2005). (Motion p.6 (Doc. No. 1, pp. 1, 10; Doc. No. 1-2). Movant essentially argues that under *Booker* the U.S. Sentencing Guidelines are advisory and thus defense counsel"fail[ed] to request for sentence reduction [from] mandatory guidelines used in the case, ...." (Motion (Doc. No. 1-2, p.10)).

### C. Defense Counsel Did Not Argue Movant's Deportable Alien Status

Movant opines that his status as a deportable alien subjects him to an increase in the severity of his sentence; makes him ineligible for early release; and prevents him from being housed in a minimum security facility. (Motion (Doc. No. 1, p.7)). Furthermore, such status makes him ineligible for halfway house release; ineligible for alcohol and drug treatment; and subjects him to deportation after completion of his sentence. (Motion (Doc. No. 1-2, p. 10)) Movant argues that his status as a deportable alien would have made available to him a downward departure in sentencing but for his defense counsel's ineffectiveness.

**D. Movant's Rights Under The Vienna Convention Were Violated**

Movant opines that the Mexican Consulate should have been contacted regarding retaining effective counsel for Movant in the criminal case giving rise to the instant Motion. (Motion (Doc. No.1, p.8)) "[A]ppointed counsel was ineffective, and the Mexican consulate would have retain[ed] a well qualified [sic] attorney in the case if informed about the charges the [Movant] was arrested and investigated for [sic]. (Motion (Doc. No.1-2, p. 11)). Moreover, " defense counsel acted in favor of the United states [sic] Government, and failed to properly investigate the charges, even when [Movant] became a victim for failing to Pay [sic] the $1,800 due to the Organization, and thereby ending up working as part of the service to pay up with no other option or choice. Competent Counsel [sic] would have compel [sic] the Government to prove the charges and allegations as outlined against [Movant], and it would have been dismissed without doubt." (*Id.*).

**III. LEGAL DISCUSSION AND ANALYSIS**

**A. Timeliness**

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), became effective on April 24, 1996. The AEDPA established limits on the filing of motions for collateral relief by prisoners specifically amending 28 U.S.C. §2255 to state in pertinent part:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of-
> (1) *the date on which the judgment of conviction becomes final*;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2255(f)(1)-(4), (emphasis added).

1    Judgment of conviction was entered on November 16, 2006 when Movant was
2 sentenced to 72 months of imprisonment in the Bureau of Prisons. In a criminal case a
3 defendant's notice of appeal must be filed within 10 days after the entry of judgment.
4 Fed.R.App.P. 4(b)(A)(i). Movant's judgment became final on December 1, 2006. *See
5 United States v. Schwartz,* 274 F.3d 1220 (9th Cir. 2001). Movant filed the instant Motion
6 under 28 U.S.C. §2255 on May 7, 2008: five months nine days after the AEDPA 1-year
7 period of limitation expired. Movant has not alleged nor is he eligible for exceptions (2), (3),
8 or (4) of 28 U.S.C. §2255(f).

9    "The statute of limitations contained in section 2255 is subject to equitable tolling."
10 *United States v. Battles,* 362 F.3d 1195, 1197 (9th Cir. 2004). To establish that he is entitled
11 to equitable tolling, Movant must demonstrate that extraordinary circumstances beyond his
12 control made it impossible for him to seek relief under section 2255 on time and the
13 extraordinary circumstances were the cause of his untimeliness. *Id.* (citing *Laws v.
14 Lamarque,* 351 F.3d 919, 922 (9th Cir. 2003)).   "[T]he threshold necessary to trigger
15 equitable tolling under [the] AEDPA is very high, lest the exceptions swallow the rule."
16 *Mendoza v. Carey,* 449 F.3d 1065, 1068 (9th Cir. 2006) (citation omitted). Movant bears the
17 burden of demonstrating that equitable tolling applies. *Id.*  Herein, Movant has not argued
18 that he is entitled to equitable tolling nor has he established grounds to support application
19 of equitable tolling to his case.

20    Movant's Motion is untimely and should be dismissed.   Moreover, even if the Court
21 were to consider Movant's claims on the merits, Movant would not be entitled to relief as
22 discussed in sections III. B through E *infra*.

23    **B. Movant's Claimed Sixth Amendment Violation**
24       **1. Notice of Appeal**

25    Movant alludes to having instructed defense counsel by phone calls and
26 correspondence to appeal the imposition of sentence. (Motion (Doc. No.1-2, pp.1, 7, 9, 10))
27 Such self-serving claim is unsupported by the record. Movant's defense counsel, Mr.
28 Baltazar Iniguez, in response to Respondent's request, submitted a signed memorandum

- 5 -

stating that: (1) Movant did not, in fact, request that a notice of appeal be filed in his case; (2) Movant waived his right to appeal his conviction and sentence; and (3) in effect, as a co-signatory of the plea agreement wherein Movant waived his right to appeal his conviction and sentence, had Movant made such a request such notice of appeal would have been filed and defense counsel would have moved to be relieved from representing Movant and requested that other counsel be appointed to represent Movant on appeal. (Response p. 2 & Ex. 1 (Doc. No. 2-2)).

Based upon the record before the Court, there is no merit to Movant's claim that defense counsel fell below an objective standard of reasonableness when defense counsel did not file a notice of appeal. There is nothing before this Court, other than Movant's bare claim, that defense counsel was instructed to file a notice of appeal.

**2. Knowing, Intelligent And Voluntary Waiver Of Rights**

Prior to proceeding with Movant's change of plea, Movant was placed under oath:

> THE COURT: Okay. At this time I'll ask the courtroom deputy to place you under oath.
> THE CLERK: Please raise your right hand.
> (Defendant sworn.)
> THE COURT: You've just taken an oath and promised to tell me the truth. If you lie to me or give false answers, you could be prosecuted for perjury or making a false statement. If convicted of one of those crimes, you could be sentenced to prison for a time in addition to the time you receive as a result of today's guilty plea. Do you understand the importance of telling the truth?
> THE DEFENDANT: Yes.

(Response Ex. 3 (Doc. No. 2-4, p. 4 )) "Solemn declarations in open court carry a strong presumption of verity." *United States v. Rubalcaba,* 811 F.2d 491, 494 (9th Cir. 1986) (citations omitted). Movant was also admonished that if at any time he did not understand or hear the Court's questions he was to so inform the Court so that the Court could repeat or rephrase the question. (*Id.*).

The record is clear that at the change of plea proceeding Movant was asked by the Court whether defense counsel had translated the plea agreement into Spanish and Movant acknowledged that such had been done. (*Id.* at p. 6). Movant acknowledged that he

1 understood defense counsel's Spanish. (*Id.*) Moreover, Movant and defense counsel met six
2 days previously at which time the plea agreement was read to and discussed with Movant and
3 all his questions were answered.(*Id.* at pp. 10-11). The Court inquired further whether: (1)
4 the plea agreement had been discussed with Movant prior to his signing it to which Movant
5 responded "Yes"; (2) defense counsel answered all questions about the plea agreement to
6 which Movant responded "Yes"; and (3) there was anything in the plea agreement Movant
7 did not understand to which Movant responded to a reference in the factual basis which,
8 after clarification, Movant informed the Court that that he understood his agreement. (*Id.* at
9 pp.11-12). Movant similarly signed his plea agreement acknowledging that: (1) the plea
10 agreement had been read to him in Spanish; (2) Movant had carefully reviewed every part
11 of it with his attorney; (3) Movant understood his plea agreement; and (4) Movant agreed to
12 it. (Response Ex. 2 (Doc. No. 2-3, pp. 8, 9)).

13       The record is clear that at the change of plea proceeding Movant was advised by the
14 Court that if he pled guilty there would be no trial and Movant unequivocally advised the
15 Court that he did not want a trial. (Response, Ex. 3 (Doc.No. 2-4, p.7). The Court went on
16 to advise Movant of the rights that he would be relinquishing by pleading guilty: (1) the right
17 to maintain a not guilty plea to the original charges; (2) the right to a jury trial; (3) the right
18 to be represented by counsel at trial; (4) the right to be presumed innocent at trial; (5) the
19 right to force the government to prove the charges against Movant beyond a reasonable
20 doubt; (6) the right to confront witnesses; (7) the right to cross-examine witnesses; (8) the
21 right to present evidence; (9) the right to subpoena witnesses to testify in his defense; and
22 (10) the right to testify at his trial or alternatively to remain silent and such silence could not
23 be used against him at trial. (*Id.* at p. 8). Movant advised the Court that he understood the
24 rights explained to him and unequivocally stated that he wanted to give up those rights
25 because he was guilty. (*Id.* at p. 9). Movant similarly signed a plea agreement acknowledging
26 that he had discussed his case and his constitutional rights with counsel and understood that
27 he was relinquishing his rights by pleading guilty. (Response Ex. 2. (Doc. No. 2-3, p. 7)).
28

The record is clear that at the change of plea proceeding the Court advised Movant that under the terms of his plea agreement he agreed to: (1) give up his right to appeal his sentence and conviction to a higher court; as well as (2) his right to collaterally attack the validity of his conviction or the correctness of his sentence provided that the sentence was in accord with the terms of his agreement. (Response Ex. 3) (Doc. No. 2-4, p. 9)). When queried by the Court whether he understood he was giving up the foregoing, Movant was equivocal as to his understanding. (*Id.*). The Court went on to explain to Movant that if he had a trial and was convicted he would have the right to appeal to a higher court or to collaterally attack the validity of the conviction or the correctness of the sentence by filing a petition with the Court, but that he had agreed to waive those two rights in his plea agreement. (*Id.* at pp.9-10). Movant, when asked whether he understood he had agreed to relinquish such rights unequivocally stated "Yes." (*Id.* at p.10). Movant similarly signed a plea agreement acknowledging that he waived both his right to appeal his sentence and conviction to a higher court and to file a petition pursuant to 28 U.S.C. §2255 collaterally attacking the validity of his conviction or the correctness of his sentence provided that the sentence was in accord with the terms of his plea agreement. (Response Ex. 2, (Doc. No. 2-3, p. 5)). Moreover, in signing his plea agreement Movant acknowledged that such waiver *shall* result in dismissal of any appeal or collateral attack Movant might file challenging either his conviction or his sentence. (*Id.*)

Movant opines that he did not know or understand the terms and conditions of his plea agreement. The record is clear that at the change of plea proceeding the Court informed Movant that the terms of his agreement called for a sentence between five years to as much as ten years and the record unequivocally indicates Movant understood this term. (Response Ex. 3 (Doc. No. 2-4, p.17)). The record is clear that at the change of plea proceeding Movant knew: (1) the plea agreement contained all terms agreed upon to resolve his case; (2) there were no other promises or agreements not contained in the plea agreement inducing Movant to plead guilty. (*Id.* at p. 12) Movant similarly signed the plea agreement wherein the Government and Movant stipulated and agreed that Movant would receive a sentence of

- 8 -

1  imprisonment between five and ten years. (Response Ex. 2 (Doc. No. 2-3, p. 4)). Moreover,
2  Movant and the Government stipulated and agreed that the Court had complete discretion to
3  depart from any otherwise applicable sentencing guideline range in order to sentence Movant
4  within the agreed-upon range of five to ten years. (*Id.*) Only if the Court concluded that the
5  range of five to ten years was inappropriate would Movant be allowed to withdraw his plea
6  of guilty pursuant to Rule 11(d)(2)(A) of the Federal Rules of Criminal Procedure. (*Id.*).

7  The record is clear that at the change of plea proceeding Movant was not under any
8  threats made or force used to get Movant to plead guilty. (Response Ex. 3 (Doc. No. 2-4, p.
9  12)). Moreover, at the change of plea proceeding Movant agreed that he had signed his plea
10  agreement and was pleading guilty voluntarily and of his own free will with the advice of
11  defense counsel. (*Id.*) Movant similarly signed a plea agreement wherein he acknowledged
12  that his plea of guilty was not the result of force, threats, assurances or promises other than
13  the promises contained in the plea agreement. (Response Ex. 2 (Doc. No. 2-3, pp.7-8))
14  Movant in that plea agreement also acknowledged that he agreed to its provisions as  a
15  voluntary act on his part and not done at the direction or recommendation of another. (*Id.* at
16  p. 8).

17  The right of appeal is statutory. *Abney v. United States,* 431 U.S. 651, 656 (1977).
18  Likewise, a petition for relief by collateral attack under 28 U.S.C. §2255 is statutory.
19  Consequently, a knowing and voluntary waiver of a statutory right is enforceable. *United*
20  *States v. Navarro-Botello,* 912 F.2d 318, 321 (9th Cir. 1990), *cert. denied,* 503 U.S. 942
21  (1992). "An *express* waiver of the right to appeal in a negotiated plea of guilty is valid if
22  knowingly and voluntarily made." *United States v. Bolinger,* 940 F.2d 478, 480 (9th Cir.
23  1991)(emphasis added)(citing *Navarro-Botello,* 912 F.2d at 322). A waiver to petition for
24  relief by collateral attack under 28 U.S.C. §2255 must also be *express* to be valid. *United*
25  *States v. Nunez,* 223 F.3d 956, 959 (9th Cir. 2000)(emphasis added). Upon oath Movant
26  avowed to the Court to be truthful, forthright and forthcoming in his statements to the Court.
27  The record is unequivocally clear that Movant in writing and orally to the Court expressly
28  waived both his right to appeal as well as his right to petition the Court for 28 U.S.C. §2255

1 relief. The record is also unequivocally clear that Movant during the Court's colloquy was 2 apprised of and knew the possible penalties he would be subject to by pleading guilty 3 pursuant to a plea agreement; was apprised of and knew the rights he was accorded and 4 would be relinquishing by pleading guilty pursuant to a plea agreement; and knowing this, 5 voluntarily entered a plea of guilty pursuant to that plea agreement intelligently waiving all 6 trial rights as well as his right to appeal and his right to petition for relief under 28 U.S.C. 7 §2255.

8 Movant, by written and express waiver of his right to appeal and right to petition for 9 relief pursuant to 28 U.S.C. §2255 does not necessarily waive his right to petition under 28 10 U.S.C. §2255 to challenge the ineffective assistance of defense counsel. *United States v.* 11 *Jeronimo,* 398 F.3d 1149, 1156 n. 4 (9th Cir. 2005)("...we do not decide whether even an 12 express waiver of all §2255 rights could be enforced to preclude an ineffective assistance 13 claim implicating the voluntariness of the waiver itself."); *United States v. Pruitt,* 32 F.3d 14 431, 432-433 (9th Cir. 1994). "By requiring ineffective assistance arguments to be raised in 15 collateral proceedings, we 'permit[] the district judge first to decide whether the claim has 16 merit, and second, if it does, to develop a record as to what counsel did, why it was done, and 17 what, if any, prejudice resulted.'" *Nunez,* 223 F.3d at 959.

18 Defense counsel's effectiveness is examined pursuant to the doctrine set forth in 19 *Strickland v. Washington,* 466 U.S. 668 (1984). Under *Strickland* there are two components 20 to an effectiveness inquiry and Movant bears the burden of establishing both.  First, Movant 21 must show that defense counsel's representation fell below an objective standard of 22 reasonableness. *Strickland,* 466 U.S. at 687-688. There is a strong presumption that defense 23 counsel "rendered adequate assistance and made all significant decisions in the exercise of 24 reasonable professional judgment." Strickland*,* 466 U.S. at 690; *see also United States v.* 25 *Palomba,* 31 F.3d 1456, 1460 (9th Cir. 1994).  Second, Movant must establish that but for 26 defense counsel's unprofessional errors the result of the proceeding would have been 27 different. *Strickland,* 466 U.S. at 694. In the context of a guilty plea, "in order to satisfy the 28 'prejudice' requirement, the [Movant] must show that there is a reasonable probability that,

1 but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Doe v. Woodford,* 508 F.3d 563, 568 (9th Cir. 2007)(*quoting Hill v. Lockhart,* 474 U.S. 52, 59 (1985)); *Lambert v. Blodgett,* 393 F.3d 943, 980 (9th Cir. 2004). Inquiry must not be confined only to outcome determination but must extend to whether or not the result of the proceeding was fundamentally unfair or unreliable. *Lockhart v. Fretwell,* 506 U.S. 364, 368 (1993); *Palomba,* 31 F.3d at 1461. Failure to make the required showing of either deficient performance or prejudice defeats the claim. *Strickland,* 466 U.S. at 697-700. The court need not address both factors where one is lacking. *Id.*

There is nothing on the record that defense counsel fell below an objective standard of reasonableness in informing Movant of the terms of his plea agreement and the rights Movant would be relinquishing by pleading guilty. The Court's change of plea colloquy confirms that defense counsel in fact fully informed and educated Movant as to the terms of his plea agreement and the rights he would be waiving. Movant knowingly, voluntarily and intelligently waived his right to appeal and his right to petition for relief pursuant to 28 U.S.C. §2255. Movant failed to establish deficient performance and the Court need not address any claims of prejudice.

### C. *United States v. Booker*

Movant's opines that defense counsel was ineffective in failing to argue under the U.S. Sentencing Guidelines for downward departure based on *United States v. Booker,* 543 U.S. 220 (2005). Reliance on *Booker* is misplaced and inapplicable to Movant's case. The U.S. Sentencing Guidelines are effectively advisory, requiring a sentencing court to consider Guidelines ranges but permitting such court to tailor the sentence in light of other statutory concerns such those enumerated in 18 U.S.C. §3553(a). *Booker,* 543 U.S. at 245-246.

Movant was indicted for Conspiracy to Commit Hostage Taking in violation of 18 U.S.C. §1203, (Count 1); Hostage Taking in violation of 18 U.S.C. §§ 1203 (Count 2); Harboring Illegal Aliens in violation of 8 U.S.C. §1324(a)(1)(A)(iii) and (B)(i), (Count 3); and Possessing a Firearm In Connection With a Crime of Violence in violation of 18 U.S.C. §924(c)(1)(A)(i), (Count 4). (Response, p.2; CR. Doc. No. 11).

1    One convicted of the offense of Possessing a Firearm In Connection With a Crime of
2 Violence shall be sentenced to a term of imprisonment of *not less than five years*. 18 U.S.C.
3 §924(c)(1)(A)(i) (2006). Count 4 of the indictment specifically states that Movant "did
4 possess a firearm, that is, a rifle, during and in relation to a crime of violence, that is, Hostage
5 Taking[1], a felony prosecutable in a Court of the United States." (CR. Doc. No.11 p.
6 3)(emphasis added). One convicted for the crime of violence of Hostage Taking "shall be
7 punished by imprisonment for *any term of years or for life*...." 18 U.S.C. §1203(a)
8 (2006)(emphasis added). An offense wherein one can be sentenced to a life sentence is
9 classified as a Class A Felony.[2] 18 U.S.C. §3559(a)(1)(2006).

10   On August 28, 2006, after establishing a factual basis for the offense (Response Ex.
11 3 (Doc. No. 2-4, pp. 19-25)), Movant pled guilty (*Id.* at p. 26) pursuant to a plea agreement
12 wherein he would receive a sentence of imprisonment between five and ten years. (Response
13 Ex. 2 (Doc. No. 2-3, p.4)). Despite mis-citation in the plea agreement to the incorrect statutes
14 classifying the offense of Possessing a Firearm In Connection With a Crime of Violence as
15 a Class A Felony, subject to as much as a life sentence, it is clear from the plea agreement
16 that: (1) the parties intended that Movant was pleading guilty to a Class A Felony (Response
17 Ex. 2(Doc. No. 2-3, p. 2 )); and (2) the maximum sentence Movant could be subject to, but
18 for the plea agreement, was a life sentence. (*Id.* at p.3). Moreover, the record is abundantly

---

[1]The plea agreement erroneously cites 8 U.S.C. §1324(a)(1)(A)(ii) (2006) as the underlying "crime of violence." (Response Ex. 2 (Doc. No. 2-3, p. 3)) Such section states that it is a crime for one to: "know[] or [be] in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law;...."

[2]The plea agreement erroneously cites 18 U.S.C. §3559(a)(3) as classifying a violation of 18 U.S.C. §924(c), Possessing a Firearm In Connection With a Crime of Violence, as a Class A Felony. Section 3559(a)(3) (2006) states: "An offense that is not specifically classified by a letter grade in the section defining it, is classified if the maximum term of imprisonment authorized is...less than twenty-five years but ten or more years, as a Class C Felony;...."

- 12 -

1  clear and unequivocal that the Court advised Movant that the offense he was pleading guilty
2  to required Movant to serve at least five years of imprisonment and that the maximum term
3  of imprisonment could be life. (*Id.* Ex. 3 (Doc. No. 2-4, pp. 13-14)) The Court similarly
4  informed Movant that pursuant to the plea agreement Movant and the Government agreed
5  that Movant would be subject to a sentence of between five and ten years which Movant
6  acknowledged understanding. (*Id.* at p.17). Consistent with the terms of the plea agreement,
7  the Court explained to Movant that the Court had discretion to depart from any otherwise
8  applicable sentencing guideline range if the Court chose to impose a sentence within the
9  agreed upon range of five to ten years (Response Ex.2 (Doc. No. 2-3, p. 4)) and that any U.S.
10 Sentencing Guidelines recommendation did not bind the Court inasmuch as such
11 recommendation is but advisory which Movant acknowledged understanding after conferring
12 with defense counsel. (Response Ex. 3 (Doc. No. 2-4, p.17))

13 A defendant convicted of violating 18 U.S.C. §924(c), whether or not convicted of
14 another crime, is subject to the guideline sentence which is the minimum term of
15 imprisonment required by statute. U.S.S.G. §2K2.4(b). The minimum term of incarceration
16 for Possessing a Firearm In Connection With a Crime of Violence is five years, i.e., the
17 minimum of the range Movant was subject to pursuant to his plea agreement and to which
18 Movant pled guilty. A sentence above the minimum term required by 18 U.S.C. §924(c) is
19 an upward departure from the guideline range and such may be warranted by the nature and
20 circumstances of the offense and history and characteristics of the defendant, and "the kinds
21 of sentence and the sentencing range established for... the applicable category of offense
22 committed by the applicable category of defendant as set forth in the guidelines...issued by
23 the Sentencing Commission...." 18 U.S.C. §3553(a)(1) and (4)(A)(ii) (2006); *See* U.S.S.G.
24 §2K2.4(b), *Application Note* 2(B).

25 On August 28, 2006, at the conclusion of Movant's change of plea proceeding, the
26 Court accepted Movant's plea of guilty. (CR. Doc. No. 67). On November 13, 2006 the Court
27 accepted the plea agreement entered into by Movant and imposed "a non-guideline sentence
28 pursuant to Title 18 U.S.C. §3553" (CR. Doc. No. 84) of 72 months on Count 4 of the

1 indictment, Possessing a Firearm In Connection With a Crime of Violence, a sentence well
2 within the range of sentence Movant knowingly, voluntarily and intelligently accepted. The
3 record is unequivocal that Movant, by the written plea agreement and colloquy with the
4 Court, was subject to a range of imprisonment of a minimum of five years to a maximum of
5 ten years and the Court sentenced him within the agreed upon range accordingly.

### D. Deportable Alien Status

Movant opines that his status as a deportable alien deprives him of a range of rehabilitative programs available to U.S. citizens and is thus disparately harsher warranting a downward departure in his sentence. Movant's place and manner of confinement is under the sole discretion of the Bureau of Prisons, and not the sentencing Court. The Ninth Circuit has held that alien status is not a basis for different treatment in sentencing. *See United States v. Martinez-Ramos,* 184 F.3d 1055, 1057-59 (9th Cir. 1999)(deportable alien status cannot be grounds for downward departure for defendants convicted of illegal reentry under 8 U.S.C. §1326); *McLean v. Crabtree,* 173 F.3d 1176, 1185-86 (9th Cir. 1999)(BOP's practice of "excluding prisoners with detainers from participating in community-based treatment programs, and consequently from sentence reduction eligibility" does not violate equal protection because it is "rationally related to the BOP's legitimate interest in preventing prisoners from fleeing detainers while participating in community treatment programs.") Movant's claim for downward departure in his sentencing is meritless.

### E. Vienna Convention Claims

Movant opines that his constitutional rights were violated under the Vienna Convention in that the Mexican consulate was not contacted to provide him with competent counsel who would have ultimately obtained a dismissal of the charges against Movant. (Motion (Doc. No. 1-2, p.11)). After a criminal defendant pleads guilty on the advice of counsel he is not automatically entitled to collateral relief because of a claim to the existence of an antecedent constitutional infirmity. *Tollett v. Henderson,* 411 U.S. 258, 266 (1973). Arguments that seek to establish violations of the Vienna Convention as grounds for showing the invalidity of a judgment of conviction, such as inadequate counsel, are insubstantial.

- 14 -

*Medellin v. Texas,* ___ U.S. ___, 129 S.Ct. 360, 361 (2008)(citing *Medellin v. Texas,* 552 U.S. ___, 128 S.Ct. 1346, 1354-1355 (2008). The inquiry is the nature of the advice and the voluntariness of the plea and, as established in III.B.2 *supra*, Movant pled guilty knowingly, voluntarily and intelligently. Movant's claim that the validity of his conviction and/or the correctness of his sentence is undermined by an alleged antecedent violation of the Vienna Convention is without merit.

## IV.  CONCLUSION

Because the Motion is untimely filed, it should be dismissed.  Moreover, even if the Motion was timely, Movant's claims are without merit.

## V.  RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court dismiss Movant's Motion Under § 2255 to Vacate, Set Aside, or Correct Sentence By A Person In Federal Custody (Doc. 1) as untimely, or alternatively, deny the Motion on the merits.

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within ten days after being served with a copy of this Report and Recommendation.  A party may respond to another party's objections within ten days after being served with a copy thereof. Fed.R.Civ.P. 72(b).  If objections are filed, the parties should use the following case number: CV 08-883-PHX-SRB / CR 06-381-PHX-SRB.

If objections are not timely filed, then the parties' right to *de novo* review by the District Court may be deemed waived. *See United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir.) (*en banc*), *cert. denied,* 540 U.S. 900 (2003).

DATED this 25th day of February, 2009.

_____
Héctor C. Estrada
United States Magistrate Judge